IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION


JULIUS SHEPPARD,

                         Plaintiff,               CIVIL ACTION NO:

                                            _____

Vs.

COBB COUNTY, GEORGIA, via

The BOARD OF COMMISSIONERS OF     JURY TRIAL DEMANDED

COBB COUNTY, GEORGIA

                  Defendant

## COMPLAINT

Plaintiff Julius Sheppard ("Sheppard") files this Complaint against the Board of Commissioners of Cobb County Georgia, Lisa Cupid, Chair ("Cobb County") showing the Court as follows:


1.

Sheppard is a resident of 325 Stone Castle Pass SW Atlanta, GA 30331 and is a citizen of the State of Georgia.

2.

Cobb County is governed by a Board of Commissioners, with its main office located at 100 Cherokee Street Marietta, Georgia 30090. Cobb County may be served by serving Lisa Cupid, Chair of the Board of Commissioners pursuant to OCGA 36-1-5, and OCGA 9-11-4 ( e ) (5).

3.

This is an employment case arising from race discrimination and retaliation against Plaintiff pursuant to 42 USC 1981, 1983 and Title VII of the Civil Rights Act of 1964, 42 USC 2000e, as well as violations of Plaintiff's First Amendment Rights under the U.S Constitution, by Defendant.

4.

Sheppard has satisfied all administrative prerequisites to perfect his claims of race discrimination and retaliation under Title

VII. Specifically, he timely filed a Charge with the EEOC, and received a

Notice of Right to Sue from the EEOC on November 14, 2020.

5.

This Court has jurisdiction over Sheppard's claims as they present federal

questions over which this Court has jurisdiction pursuant to 28 USC 1331 and

1343 (a).

6.

Venue is proper in this Court as the violations of Sheppard's rights all

occurred in the Northern District of Georgia, such that a substantial part of the events

and omissions giving rise to Plaintiffs claims occurred in the Atlanta Division of the

United States District Court for the Northern District of Georgia.

7.

Sheppard's race is black.

8.

Sheppard has been a Cobb County employee for over eight years. Sheppard

began his career with Cobb County as a Maintenance worker in 2013 at the

Sweetwater Tennis Center located at 2447 Clay Road, Austell, GA 30168, after

a career of 33 years as an executive with Rock Tenn, an American paper and

packaging company.

9.

In this action Sheppard is suing Cobb County by serving the chair of its Board of Commissioners referenced above.

10.

Cobb County was and is Sheppard's employer as defined by Title Vii, 42 USC 2000e(b).

11.

Cobb County is a state actor within the meaning of the Constitution of the United States, and has acted under color of state lawwith respect to Sheppard. .

12.

Sheppard  was "promoted" in 2018 from his original position as Maintenance Worker with his new title being "Recreation Assistant" in 2018. Sheppard worked at the Cobb County Park Services Sweetwater Tennis Center. None of the individual defendants or Cobb County really recognized Sheppard's promotion or provided the kind of clarity that should have accompanied the change in his title, if it was in fact a "promotion".

13.

Throughout Sheppard's tenure with the Cobb County Parks Department, both in his Maintenance Worker and Recreation Assistant posts, Sheppard has

always received excellent reviews. For a large portion of his tenure, in fact, Cobb

County has required Sheppard to act in an executive function far above the status

of the two positions in which Cobb County has employed Sheppard, because the

county and Sheppard's supervisors knew of his executive experience and wanted to

utilize it (without paying market rates for it).

14.

Sheppard has tried to advance in his position and status within the Cobb

Parks Department, but more importantly, to an appropriate rate of pay for

someone doing the work Sheppard is doing for Cobb County, with the

unquestionable skills and experience Sheppard has. The fact that Sheppard was

being criminally underpaid is well known by everyone within

the Cobb  County Parks and Recreation Department who work with Sheppard, but

Sheppard has met stiff, retaliatory resistance to any appropriate pay increase from

all these individuals (looking out for their own selfish interests), and Cobb

County.

15.

Despite his excellent service in the roles Sheppard was assigned which were

above his pay grade, Cobb County has not even paid Sheppard the amount Cobb

County pays maintenance workers in the same position previously held by

Sheppard--- the hourly rate of $ 12.00---and, worse, has not paid him the amount

Cobb County pays its Recreation Assistants.

16.

Sheppard has been and is  underpaid to do the same work in comparison to other workers filling the same maintenance worker position at other locations. This has been ongoing for the entire time preceding his charge to the EEOC.  Instead of the $12.00 an hour the others received, Sheppard only received $7.35 per hour to do the same exact job, as a result of racial discrimination.

17.

Cobb County's intentional decision to underpay Sheppard is a continuing tort, as an intentional interference with Sheppard's property right in his employment, and Cobb County has never provided Sheppard with due process in considering that he should have been paid the $ 12.00 rate when he was hired, instead of the hourly rate $4.65/hour less than the published pay rate--- a more than one-third reduction in pay.

18.

Cobb County has in fact benefited from underpaying Sheppard. Cobb County has saved a lot of money getting Sheppard to perform the job functions of the Director of Tennis, Maintenance Worker, and Recreation Assistant, at all the

same time. Sheppard would have been underpaid if he had been filling just one of the above-mentioned positions, yet Sheppard has been heavily relied upon to fill the job functions of all three of the positions listed---hence the characterization, "criminally underpaid."

19.

Sheppard has a specialized certification as a US Tennis Association Referee that the individual defendants do not have. Therefore, Sheppard is heavily relied upon by the individual defendants to referee at Tennis Tournaments sponsored by Cobb Parks and Recreation.

20.

Sheppard has challenged the fact that he was and is being underpaid by Cobb County to numerous people within the Cobb County government and its administrative bodies. Because of the concerns Sheppard raised, a Cobb County supervisor was assigned to investigate and resolve the matter by arranging for Cobb County to make payment of any deficiency in compensation that Sheppard experienced which he validated in his investigation.

21.

This supervisor refused to even start the investigation, much less complete it Instead of providing Sheppard due process so that Sheppard's claim could be lawfully considered, or arranging for Sheppard to be properly paid, the

supervisor flatly told Sheppard from the start his supervising Sheppard's work that whatever pay Sheppard received was all he would be paid, even if Sheppard's pay was lower than it should have been. If Sheppard's pay had been in express violation of and clear non-compliance with the publicly published rates of pay for particular job titles Cobb County issued, he would provide no relief to Sheppard regardless.

22.

Sheppard's rate of pay in fact was not in the amount the posted pay scale said he should have received. Sheppard spoon-fed the Cobb County supervisor the correct information, but he refused to take any action in response to it.

23.

Cobb County intentionally and wrongfully refused to pay Sheppard in accordance with its own published pay rates because of his race.

24.

Cobb County has retaliated against Sheppard, as a result of Sheppard's resistance to being underpaid and labeled Sheppard as a troublemaker.

25.

The discrimination against Sheppard is deliberate racism.

26.

When Cobb County investigated Oswald in response to complaints that Oswald's campaign was racist. Oswald was not disciplined, Oswald was not fired, Cobb County did not give any appearance or statement that it believed what Oswald was doing was improper or worse, nor was there any public statement from Cobb County acknowledging the racist nature of campaign. Oswald was simply transferred to Cobb County's Lost Mountain Tennis facility (not coincidentally, away from Sheppard).

27.

As Sheppard voiced concerns against the unfair disparities between the facilities Cobb County provided to persons of color, cobb county willfully and intentionally underpaid Sheppard, in part because he exercised his constitutional rights of free speech under the First Amendment to the Constitution of the United States.

28.

Sheppard was and is the only black tennis credentialed referee Cobb County employs. Cobb County's demands on Sheppard to referee have been intense, while his supervisor has opposed Sheppard's receiving these assignments.

29.

Sheppard has only received a minimal pay increases from Cobb County in his eight years of employment by Cobb County. His rates of pay are listed below.

2013- $7.35

2014- $7.50

2015-$8.38 2016-

$8.38 2017-$8.50

2018-$8.75 2019-

$9.78

2020-$10.28

30.

Sheppard has never been paid Cobb's published bottom rate per hour even for Maintenance Workers, $ 12.00 per hour.

31.

Individual Cobb County employees took various adverse actions against Sheppard to try to put him in the place they believed his race put him in, including publicly berating him in front of regular players, multiple times Particularly Oswald would EVEN BERATE SHEPPARD IN FRONT OF HIS TENNIS PLAYING YEAR OLD SON old on at least one occasion accusing Sheppard of stealing--in front of his son. The real facts of the claimed "stealing"? Taking home the key to the Lost Mountain cash register home for security reasons.

32.

At a certain point, Cobb County decided they have had enough of Sheppard despite his talents, and they have decided they want Sheppard to quit.

33.

Cobb County has now begun cutting Sheppard's hours because of his complaints about being underpaid as a black employee.

34.

Sheppard has complained to Cobb County management about his working conditions, particularly about the down streaming of County work to him by the individual defendants so that they, during County work time, can receive this cash side pay for the private tennis lessons. Sheppard's reward for raising this issue with Cobb County has been retaliation for his complaints.

35.

Sheppard's identification of apparent Cobb County policy violations by the individual defendants resulted in Sheppard's hours assigned to work being cut drastically. Sheppard is currently limited to working six hours a week.

36.

Sheppard's hours were cut intentionally by Cobb County to almost none, as part of a plan to cut Sheppard's pay so badly that he would quit, and then wouldn't be around to make them accountable to the law or even public decency.

37.

Cobb County has demonstrated actual intent to harm Sheppard both as an individual and as a subordinate employee.

38.                                                        .

Sheppard is entitled to recover damages from Cobb County under 42 USC 1983, for equal protection violations under the Equal Protection Clause, under 42 USC 1981 for race discrimination, for violations of Title VII, for retaliation under 42 USC 1981, and for violating Sheppard'sf ree speech rights under 42 USC 1983.

39.

The question of whether employment discrimination has occurred, according to current law exemplified by Bostock v. Clayton County is focused totally on the complaining individual—in relation to the individual Plaintiffs claim of discrimination, his membership in the protected class such as race, or color only has to be a motivating factor for the adverse employment decision (lower standard); or a "but for" cause of the adverse employment action (higher standard)-- in order to be actionable as a Title VII violation.

40.

Sheppard would not have been assigned to the black and people of color territory had he not been black. It is beyond plausible, and apparently obvious to any disinterested party, that race or color was the motivating factor behind Cobb County's decision to put the black man in the black territory, and to pay him below even what a Maintenance Worker should be making under the Cobb County published pay scale.

46.

As a direct result of Defendant's actions, Sheppard lost wages, future income, fringe benefits, and opportunities for advancement, all in amounts to be proven at trial. And, Defendant acted intentionally to harm Sheppard, and is therefore liable to Sheppard for punitive damages in an amount to be determined in the enlightened conscience of the jury.

## Prayer for relief

**WHEREFORE**, Sheppard demands relief against Cobb County as follows:

1. Trial by Jury,

2. A judgment against Cobb County in an amount to be determined in the enlightened conscience of the jury for lost wages, lost future income, lost

fringe benefits, and other relief, all in amounts to be proven at trial, plus
attorneys' fees and for punitive damages in an amount to be determined in
the enlightened conscience of the jury.

3. Such other and further relief as the Court deems just and proper.

This 10th day of February, 2021

                                        DALZIEL LAW FIRM

                                        *s/Charles M. Dalziel, Jr.*
                                        Charles M. Dalziel, Jr.
                                        Georgia Bar No. 203730
                                        31 Atlanta Street Suite 200
                                        Marietta, Georgia 30060
                                        404.735.0438
                                        chuck@dalziellawfirm.com

## **CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1D, the undersigned certifies that the foregoing

## **COMPLAINT**

has been prepared in Times New Roman 14 point font, one of the four fonts

approved by the Court in LR 5.1B.


This 10th day of February, 2021

s/Charles M. Dalziel, Jr.
Charles M. Dalziel, Jr.
Georgia Bar No. 203730
DALZIEL LAW FIRM
31 Atlanta Street Suite 200
Marietta, Georgia 30060
404.735.0438